## Case No. 6,797.

### HOWLAND v. The LAVINIA.

[1 Pet. Adm. 123.] [1]

District Court, D. Pennsylvania. 1801.

#### SEAMAN—WAGES.

A seaman carried off, vessel taken and retaken, paid salvage, and earned freight. Wages for the voyage claimed and allowed.

[Cited in Giles v. The Cynthia, Case No. 5,424; Bork v. Norton, Id. 1,659; The Zenobia, Id. 18,208; Passenger Cases, 7 How. (48 U. S.) 539; Race v. Nine Thousand Six Hundred and Eighty-One Dry Ox Hides, Id. 11,520.]

[Cited in Cope v. Dodd, 13 Pa. St. 35; Ogden v. New York Mut. Ins. Co., 35 N. Y. 420, 421; Griggs v. Austin, 3 Pick. 21; Brown v. Harris, 2 Gray, 360.]

John Howland was forcibly taken out of the vessel, and carried off by the capturing

---

[1] [Reported by Richard Peters, Jr., Esq.]

privateer. The brig was retaken, paid salvage, and returned to Philadelphia, having earned her freight. Wages were claimed for voyage, deducting a proportion of salvage.

BY THE COURT. I have so often determined this point, that it is needless to enter into any further discussion of it. It must be settled on appeal by a superior court, if parties are dissatisfied with my opinion.[2]

I have cited, on former occasions, principles of the common law, (in which I still believe) in support of the doctrine influencing my judgment. These principles are to be found in the oldest and most venerable common law authorities. I did not exclusively, or in any important degree rely on them; though I call them in as auxiliaries. I am well aware that modern opinions clash on this subject—I have looked into the oldest books as being nearer the time of the establishment of common law principles, "Melius est petere fontes, quam sectare rivulos." It is well known that many of the principles of the civil and Roman law are engrafted into the system of the common law; though, as principles of the civil law, common lawyers will not acknowledge them. I do not think that the difference of opinion, in the case of a servant, is important in this question. A seaman is not in a similar predicament; no fund is peculiarly appropriated for payment of wages, to servants or labourers; but a seaman is entitled or not to his wages, according to the fate of a particular fund, to wit, freight. If this fund is lost, he suffers with the merchant, and reaps not the rewards of his dangers and his toils.

The soundness of the law maxim is proved by a just transposition of its terms, "Qui sentit onus, sentire debet et commodum." He loses also his right to this, by fault, negligence, fraud, or non-performance of contract, flowing from wilful malfeazance, misfeazance, or gross neglect. But he ought not to suffer, or have his risk or responsibility increased, by circumstances he cannot control, where the fund, though temporarily in danger, is ultimately safe.—Decree for the libellant.

An incident in this cause, produced an examination into the subject of passage money, and the court delivered the following opinion:[3]

BY THE COURT. On principle, the same rules are to be applied to passage money as are established on the subject of freight. Moll. 256, 260. This vessel had touched, without intending to end her voyage, at a port distant from the port of destination, but was obliged to unlade, and could not proceed. No passage money is due before the passenger arrives at the port of destination, unless compensation pro rata itineris, is agreed to be paid. His expenses, or the means of proceeding to the place of destination, must be paid, or tendered, to a passenger. On refusal to proceed, compensation pro rata is demandable. If the passage money has been paid before hand, it ought to be refunded, on the principles before stated. So freight on goods is not payable, 'till delivery at the port for which they are shipped. If by stress of weather, or other cause, a ship puts into another port, and unlades, or if she is wrecked, and goods saved, these must, at the expense of the owners of

---

[2] Since the points here determined, I have continued to decide whenever they have occurred, on the same principles. In the case of The Friends (Dec. 11th, 1801) 4 C. Rob. Adm. 143, Sir W. Scott determined in the case of a belligerent British seaman, that the recapture extinguished the contract, which the recapture did not revive. But I conceive the situation of a neutral seaman, one of the crew of a neutral ship, carrying in for adjudication, and taken away from his ship by the vis major, is not similar to the case of the sailor as determined by Sir W. Scott; and so I continue to decide, respectable as his opinion most assuredly is. The neutral seaman was not captured and carried off as a subject liable to the hazards of war, but as a citizen of a friendly nation, whose vessels must submit to search and adjudication. He was brought into the difficulty "in the service of the vessel," and, on that account, his case stands in the same equity with that of one sent in the service of the ship, on special mission, and taken by rovers or pirates, or wrecked. His misfortune occurred on account of his service, connected with and as it related to, the ship, and not to the nation whereof he is a citizen. A belligerent seaman is a subject of capture by the enemy of his nation in any ship, but the neutral mariner, only by being found in the vessel subjected to search, restraint and adjudication. Though the vessel may be condemned for unneutral conduct, the person of the mariner is free. If the vessel be acquitted, he is bound, if present, to continue his services, not under a new contract, but in conformity with his original agreement. The recapture, as it is called, by one belligerent, of a neutral in possession of another, and the payment of salvage, is most frequently arbitrary, and settles no principle on which the first contract is dissolved. I have therefore thought it just that the seaman should pay his proportion of salvage; because that was the price by which the fund out of which his wages are payable, was redeemed from temporary, and too frequently unwarrantable, restraint. I cannot perceive a similitude in the case of seizures of neutral ships, to those of prizes taken from each other by nations at war. —Less similar are the cases of individual mariners who are neutrals, to those of subjects of belligerent parties.—1804.

[3] This was an incident arising out of, and connected with, the general affairs of the ship; the original cause being incontrovertibly within admiralty jurisdiction. However applicable some general principles may be to its being within the jurisdiction of the admiralty, as a contract made on land "to be performed on the sea," I have always leaned against taking jurisdiction in disputed cases; such as freight, &c. though ancient authorities would justify me in so doing. It will be seen, in decisions hereafter, that in the distribution of remnants and surplus of monies in court, I have avoided taking cognizance of claims, unless liens were precedently attached to the things, from which the monies were produced. In transactions, where the commencement and consummation of the contract were, exclusively, on land, I have held it, in general, very disputable, at least, whether the jurisdiction attached, though the intermediate and indispensable portion of performance, was on the sea.—July, 1806.

the ship, be transported to their destined port before freight is payable. The subject of passage money produced in a case mentioned by Photier 315, 409, a curious discussion.

NOTE. Freight here is to be understood "full and entire freight." Freight pro rata itineris is payable in certain cases. See Luke v. Lyde, 2 Burrows, 882, 884; Com. Dig. 230, 231, and cases cited.